2000 ME 141

## MUNJOY SPORTING & ATHLETIC CLUB

v.

## Malcolm DOW, Chief of the Maine State Police.

Supreme Judicial Court of Maine.

Argued Jan. 6, 2000.

Decided July 21, 2000.

**534**

Marshall J. Tinkle, Esq., (orally), David M. Hirshon, Esq., Tompkins, Clough, Hirshon & Langer, P.A., Portland, for plaintiff.

Andrew Ketterer, Attorney General, Donald Macomber, Asst. A.G. (orally), Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

WATHEN, C.J.

[¶ 1] Munjoy Social and Athletic Club (Munjoy) appeals from the judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) denying its 80C appeal from the State Police denial in January of 1998 of Munjoy's application for beano and games of chance licenses pursuant to 17 M.R.S.A. §§ 312,[1] 331[2] (1983 & Supp.1999). On appeal, Munjoy argues that the State Police violated Munjoy's statutory and due process rights when it denied Munjoy's applications without a hearing, and that, even if it was not entitled to a hearing, there was insufficient evidence to support denial of the applications. Because we conclude that the State Police erred by failing to hold a hearing before denying Munjoy's applications on the basis that it is not a bona fide nonprofit organization, we vacate and remand for a hearing. Munjoy also appeals from the

---

1. The statute provides, in pertinent part: "No person, firm, association or corporation shall hold, conduct or operate the amusement commonly known as 'Beano' or 'Bingo' for the entertainment of the public within the State unless a license therefor is obtained from the Chief of the State Police." 17 M.R.S.A. § 312 (Supp.1999).

2. The statute provides, in pertinent part: "No person, firm, corporation, association or organization shall hold, conduct or operate a game of chance within the State unless a license therefor is obtained from the Chief of the State Police ...." 17 M.R.S.A. § 331(1) (1983).

court's (*Calkins, J.*) dismissal of its 42 U.S.C. § 1983 claim against Malcolm Dow personally. Munjoy contends that the court improperly based its dismissal upon Dow's assertion of immunity, and that, even if immunity were properly raised, Dow did not enjoy immunity on the facts before the court. We disagree and affirm the dismissal.

[¶ 2] Because of the procedural posture of this case, it comes before us on the investigative record created by the State Police prior to its denial of Munjoy's license applications. It appears that Munjoy is a social club that has been in existence since 1949. The club was both a fraternal and charitable organization, meeting informally at social gatherings while also contributing money and services to charities. Membership had been on the decline until 1993, when the club experienced a resurgence, growing to at least 58 members in that year. In February of that year, the club rented facilities in Portland and applied for licenses to run beano and games of chance.[3] As part of the initial application process, the State Police required Munjoy to provide minutes from two years of membership meetings, a members list, affidavits of members, and two years of bank statements for any club accounts, along with a copy of its by-laws, and its certificate of incorporation. Munjoy's applications were granted, and it was required to send a representative to a workshop that reviewed the rules and regulations governing beano and games of chance.

[¶ 3] The club ran its beano operation from its Portland location until 1995, when it expanded and leased a hall of approximately 9,600 square feet in Scarborough. Over the course of the next two years, the gaming operation grew quite large; in the first six months of 1997 alone, Munjoy grossed over a million dollars on this operation. Throughout this time, Munjoy applied for and was granted licenses by the State Police. Although it is not clear from the record before us, Munjoy appears to have been granted monthly licenses in six month blocks. The application process for these subsequent licenses differed from the initial application. Instead of providing affidavits and other documents, Munjoy was assigned a number and ordered to use that number in all subsequent applications. Again, it is not clear from the record before us, but it appears that the decisions to grant the licenses from 1993 to 1997 were based upon the information Munjoy initially submitted, along with any other evidence later added to their file.[4]

[¶ 4] In mid–1997, the State Police began an investigation into whether Munjoy was a "bona fide nonprofit organization." This investigation concluded in December of that year. Approximately a month later, the State Police denied Munjoy's applications. The State Police informed Munjoy that their investigation indicated that Munjoy "does not meet the requisite qualification of being a 'bona fide nonprofit organization.'" Munjoy protested this decision and was allowed to file additional documents to supplement the State Police's investigatory record. The police is-

---

**3.** Munjoy has operated what is commonly referred to as low stakes beano. "Low stakes Beano is commonly conducted in churches or other non-profit groups." GOVERNOR'S ADVISORY COMMITTEE ON GAMBLING, WIN, LOSE OR DRAW: GAMBLING IN MAINE 12 (1997). Prizes are strictly limited in low stakes beano: "[N]o single prize may exceed $400 in value and ... no more than $1,400 in total prizes may be awarded on any one occasion." 17 M.R.S.A. § 317 (Supp.1999). High stakes beano, on the other hand, may only be conducted by "any federally recognized Indian tribe." 17 M.R.S.A. § 314–A(1) (Supp.1999). There are

no limits upon the prizes that may be awarded in a high stakes beano game. *See id.* § 314–A(2).

**4.** From time to time, the State Police requested additional information about Munjoy and its gaming operations. Though the results from these requests appear to have been placed in Munjoy's file, those requests were not made in connection with Munjoy applications or decisions to be made on those applications.

sued a license for the month of February while they reviewed Munjoy's filing, but again concluded that Munjoy was not a "bona fide nonprofit organization" and therefore did not qualify for the licenses. At no point did the State Police hold a hearing on Munjoy's applications.

[¶ 5] Following the denial of its licenses, Munjoy filed the present action in Superior Court. In addition to an 80C appeal of the denial of its license applications, Munjoy also included a request for injunctive relief, a claim for the violation of Maine civil rights law, and a section 1983 claim against Chief Malcolm Dow in his personal capacity. The State Police and Dow answered the complaint, asserted qualified immunity as an affirmative defense, and moved for dismissal on Munjoy's claims for section 1983 damages and for relief under Maine civil rights law. The court granted the motion. Shortly thereafter, the court, finding that the license denials were clearly supported by substantial evidence in the record, also denied the 80C appeal and upheld the State Police determination that Munjoy was not a bona fide nonprofit corporation. Munjoy appeals from the judgment.

[¶ 6] We consider Munjoy's 80C appeal first. When the Superior Court acts in its appellate capacity pursuant to M.R. Civ. P. 80C, we review the administrative decision directly. *See Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d 1304, 1305–06 (Me.1996). "The standard of review is limited to whether the [governmental agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Davric Maine Corp. v. Maine Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289, 293. We will vacate a decision only if

the administrative findings, inferences, or conclusions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by bias or error

of law; (5) Unsupported by substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion.

*Hale–Rice v. Maine State Retirement Sys.,* 1997 ME 64, ¶ 8, 691 A.2d 1232, 1235.

[¶ 7] Munjoy argues that both Maine law and the United States Constitution entitle it to a hearing on its license applications. We address Munjoy's state law contentions first. Munjoy argues that its applications were renewals of existing licenses and therefore a hearing was required by the Administrative Procedures Act. Whether the Munjoy applications sought the renewal of existing licenses is a matter of statutory interpretation and therefore a question of law. *See Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 676 (Me.1996). We review questions of law de novo. *See Collins v. Trius, Inc.,* 663 A.2d 570, 572 (Me.1995).

[¶ 8] Munjoy is correct in its argument that if its applications are for a renewal of its licenses, then it is entitled to an administrative hearing. *See* 5 M.R.S.A. § 10003(1) (1989). A hearing would also be required under the beano and games of chance statutes if we were to find that the denial of Munjoy's applications were a revocation of existing licenses. *See* 17 M.R.S.A. §§ 317–A, 343–A (Supp.1999). No hearing is required, however, if Munjoy's applications are, as the State Police contend, applications for new licenses rather than for the renewal of old licenses. The State Police have been given authority by the Legislature to administer the beano and games of chance statutes. "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not binding on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Association,* 684 A.2d at 1306; *Davric Maine Corp.,* 1999 ME 99, ¶ 7, 732 A.2d at 293. Munjoy argues that the State Police have not been consistent in their

interpretation of the statutes. Although, the police have consistently stated that all applications are new, Munjoy argues that the State Police practice in this area—*i.e.,* basing its subsequent grants of licenses upon information garnered as part of Munjoy's initial application—indicates that even the State Police considered Munjoy's application a renewal.

■ [¶ 9] Although we agree there is a superficial inconsistency between the actions and words of the State Police, we are unable to agree that it should affect our analysis of the statute. Administrative practice cannot alter statutory language. Even if we were to accept Munjoy's contentions regarding the State Police interpretation, the statutes compel the contrary reading. In stark contrast to other statutes that explicitly mention renewal licenses,[5] the beano and games of chance statutes make no provision for either the renewal or the reissuance of old licenses, which instead simply expire upon the completion of their term. Therefore, when the State Police denied Munjoy's applications, they neither refused to renew nor revoked an old license. Munjoy has no statutory right to a hearing under Maine law.

■ [¶ 10] Munjoy next argues that the failure to provide a hearing was a violation of its procedural due process rights under the United States Constitution. "The requirements of procedural due process [protect citizens against] the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Though the Constitution protects property interests, it does not create such interests, nor does the Constitution protect those interests that are nothing more than a unilateral and abstract expectation of a future benefit. *See id.* at 577, 92 S.Ct. 2701. To determine whether Munjoy has an interest

in these licenses, we turn to "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus, we look to the beano and games of chance statutes to determine if Munjoy has a "legitimate claim of entitlement" to a new license. *Id.* If Munjoy does have such a protected interest in the licenses it applied for, "the right to some kind of prior hearing is paramount." *Id.* at 569–70, 92 S.Ct. 2701.

■ [¶ 11] Generally, licenses do not create a protected property interest when broad discretion is vested in a state official or agency to deny or approve the application. *See Gonzales v. Commissioner, Dep't of Pub. Safety,* 665 A.2d 681, 683 (Me.1995). In such cases, an applicant has little more than an abstract or unilateral expectation in that license. *See id.; Paron v. City of Shakopee,* 226 Minn. 222, 32 N.W.2d 603, 609 (1948) (noting that Minnesota courts are without power to control the decision of agencies issuing liquor licenses beyond preventing arbitrary or capricious decisions), *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716 (8th Cir.1995) (noting that state authority could not issue bingo license without approval of municipality and that municipality had unfettered discretion in deciding whether to issue its approval). *Cf. Gregory v. Town of Pittsfield,* 479 A.2d 1304, 1307–08 (Me.1984) (holding that statutorily mandated de novo review of need eliminated anything more than an abstract expectancy in Maine general assistance benefits). On the other hand, "[i]f a benefit is a matter of statutory entitlement for persons qualified to receive them, then the government has created a property interest in that benefit." *Federal Lands Legal Consortium ex rel. Robart Estate v. United States,* 195 F.3d 1190, 1197 (10th Cir.1999);

---

5. *See, e.g.,* 7 M.R.S.A. § 1015 (1989); 8 M.R.S.A. § 271 (Supp.1999); 22 M.R.S.A. § 2494 (1992); 28–A M.R.S.A. § 652(3) (Supp.1999).

*see also Zeus Corp. v. City of Decorah, Iowa*, 957 F.Supp. 1093, 1096 (N.D.Iowa 1996) (noting that licenses create property rights "where state law mandated renewal upon satisfaction of certain substantive prerequisites"). Although the licensing statutes grant a degree of discretion to the State Police, the scope of that discretion does not include the legal and factual determination whether an organization is a bona fide nonprofit organization of the appropriate type

[¶ 12] The beano statute provides that the "Chief of the State Police *may issue licenses* to operate beano or bingo games to *any ... bona fide nonprofit* charitable, educational, political, civic, recreational, fraternal, patriotic, religious or veterans' *organization* ...." 17 M.R.S.A. § 314 (Supp.1999) (emphasis added).[6] At a minimum, the statute grants the State Police discretionary authority to withhold all licenses, and arguably discretionary authority, for example, to issue licenses to some or all of the types of organizations listed within the statute, or to limit the total number of licenses issued in a given period of time. Munjoy's applications were not denied on the basis of such discretionary authority. Munjoy was excluded as an eligible applicant because of a factual and legal determination that it is not a bona fide nonprofit organization. Whatever range of discretion is granted under the statutes, whether a particular organization is an eligible applicant is not a matter of discretion.

[¶ 13] Because the Chief of the State Police has not exercised his discretion to limit those organizations who are eligible for a license, once applicants make a threshold showing that they are a bona fide nonprofit organization of the particular type generally issued licenses, they have a legitimate expectation that the license will issue. Munjoy made this showing through the materials it submitted with its first application.[7] Munjoy therefore has a protected property interest in the license; the State Police must afford Munjoy a hearing before the State Police may deny Munjoy's application on the basis that it is not a bona fide nonprofit organization.

[¶ 14] Because the definition of a "bona fide nonprofit ... organization" is sure to arise on remand, we briefly address that question now in the interest of judicial economy. This term is not defined in the statute, and, though the Legislature has authorized "the State Police Chief to adopt rules to ensure that licenses are issued only to bona fide nonprofit organizations," L.D. 2325, Statement of Fact at 7 (111th Legis.1984), no such rules have been called to our attention. Munjoy argues that the term merely indicates that the organization must satisfy the requirements of Title 13–B, Maine's nonprofit corporation statute.[8] We disagree. As the above discussion illustrates, the demonstration that an organization complies with Title 13–B is relevant primarily as part of that organization's threshold proffer that it is an eligible applicant. The statute itself, however, indicates that a further demonstration than simple nonprofit status is required. Section 343(7) declares that "[t]he establishment of organizations which exist primarily to operate games of chance and do not have a bona fide nonprofit charitable, educational, political, civic, recreational, frater-

6. The games of chance statute is substantially similar: "Notwithstanding other provisions of law, the Chief of the State Police may issue a license to operate a game of chance ... to a bona fide nonprofit charitable, educational, political, civic, recreational, fraternal, patriotic or religious organization ... any of which must be founded, chartered or organized in this State before applying for a license." 17 M.R.S.A. § 332(1) (Supp.1999).

7. We stress that Munjoy's interest in the license is not dependent upon the conduct of the State Police in issuing prior licenses.

8. According to that statute, " '[n]onprofit corporation' means a corporation, no part of the income or profit of which is distributable to its members, directors or officers." 13–B M.R.S.A. § 102(9) (1981).

nal, patriotic, religious or public safety purpose" is considered undesirable. 17 M.R.S.A. § 343(7) (Supp.1999).

[¶ 15] There is much diversity within the community of nonprofit organizations holding licenses.[9] We conclude, however, that the term is placed within the statute to deal with the problem of "shell nonprofit organizations." *See* GOVERNOR'S ADVISORY COMMITTEE ON GAMBLING, WIN, LOSE OR DRAW: GAMBLING IN MAINE 12 (1997) (defining shell nonprofit organizations as a "dead organization is reactivated and used as a front for a Beano license"). The key to identifying a bona fide nonprofit organization therefore does not revolve solely around its legal existence as a nonprofit corporation. The licensing statutes focus also upon the organization's primary purpose. If, at the time of application, the organization exists primarily to provide employment to its officers, directors, or employees through the operation of beano and games of chance, then it is not a bona fide nonprofit organization. Thus, it is not enough for an organization to have some charitable, fraternal, etc. goals if the bulk of an organization's reason for being is not the furtherance of those goals, but instead is the organization's gaming operations. The beano and games of chance statutes are not meant to regulate a gambling industry, but instead to provide specified types of socially desirable nonprofit organizations with a fund raising tool.

[¶ 16] Finally, we turn to Munjoy's contention that the Superior Court erred when it dismissed Munjoy's section 1983 claim. "A motion to dismiss tests the legal sufficiency of the complaint[;] ... we examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth ... facts that would entitle the plaintiff to relief ...." *See McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). A complaint "should not be dismissed unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim." *Webb v. Haas*, 665 A.2d 1005, 1009 (Me.1995). Munjoy alleged that Dow's actions denied it equal protection, that Dow infringed upon Munjoy's liberty interests, and that Dow infringed upon Munjoy's procedural due process rights. Dismissal was proper as to the first two of these claims because Munjoy failed to plead facts that would support recovery under either theory.

[¶ 17] As to the third of Munjoy's claims, Dow asserted, as an affirmative defense, that he enjoyed qualified immunity. Contrary to Munjoy's contentions, immunities and other affirmative defenses "may be raised by a motion to dismiss if facts giving rise to the defense appear on the face of the complaint." *Shaw v. Southern Aroostook Community Sch. Dist.*, 683 A.2d 502, 504 (Me.1996). Because Munjoy specifically sued Dow for "monetary damages pursuant to section 1983" arising from Dow's official actions, Dow's motion to dismiss may raise the immunity issue. *See Andrews v. Department of Environmental Protection*, 1998 ME 198, ¶ 11, 716 A.2d 212, 217.

[¶ 18] Qualified immunity "shield[s] governmental employees from law suits and liability for their discretionary actions." *Webb*, 665 A.2d at 1010, *Andrews*, 1998 ME 198, ¶ 11, 716 A.2d at

---

9. The Governor's Committee on Gambling has listed three categories of organizations offering beano and games of chance: (1) non-profit charities that have an IRS designation (e.g. the Catholic church). These organizations donate most or all of their revenue to charity; (2) Non-profit groups without an IRS designation that donate some of the revenues to charitable organizations and (3) non-profit organizations without IRS designation that use the majority, if not all, of the revenues for their own organization's benefit with only a small amount going to charitable causes. All three types of organizations are operating within the scope of the law. GOVERNOR'S ADVISORY COMMITTEE ON GAMBLING, WIN, LOSE OR DRAW: GAMBLING IN MAINE 40 (1997). Munjoy would fall within either the second or third category.

217. "A public official claiming qualified immunity ... must establish either that he or she did not violate the plaintiff's rights or that given the state of the law a reasonable official would not have understood that he [or she] was doing so." *Andrews,* 1998 ME 198, ¶ 11, 716 A.2d at 217 (internal quotations omitted). A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness must be apparent in light of preexisting law." *Id.* ¶ 12, 716 A.2d at 217. Although we now conclude that Munjoy had a right to a hearing, our discussion amply illustrates that this right was not so clearly established that Dow would have understood that his actions violated Munjoy's rights.

The entry is:

The judgment on Munjoy's 80C appeal is vacated. Remanded to the Superior Court with instructions to remand to the State Police for further proceedings consistent with the opinion herein. In all other respects, the judgment is affirmed.