STATE OF MAINE
AROOSTOOK,SS

SUPERIOR COURT
DOCKET NO. CARSC-CV-02-007

CAH - AKD - 3/15/2002

ROBERT J. PLOURDE and
CANDYCE C. PLOURDE
    Of Fort Kent
             PLAINTIFFS

VS.

VALLEY SNO-RIDERS, INC.
    A Maine corporation having an
    Office and place of business in
    Fort Kent.

             DEFENDANT
AND

FORT KENT SNOWMOBILE ASSOC.
    An unincorporated association in
    Fort Kent

             DEFENDANT
AND

GARY DUMOND and
PAULINE DUMOND
    Of Fort Kent

             DEFENDANTS
AND

INHABITANTS OF THE TOWN OF
FORT KENT, A municipal corporation
Having an office and place of business
In Fort Kent

STATE OF MAINE, DEPARTMENT
OF CONSERVATION, An agency of the
State of Maine with an office and place of
Business in Augusta.

        PARTIES IN INTEREST

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DONALD L. GARBRECHT
LAW LIBRARY

APR 8 2002

ORDER ON APPLICATION
FOR PRELIMINARY
INJUNCTION

Pending before the court is the Plaintiffs Robert and Candyce Plourde's application for a preliminary injunction pursuant to M.R.Civ. P. 65.[1] The Plourdes allege that the four named Defendants, jointly and severally, have created an intolerable nuisance in their neighborhood and they want it stopped. Specifically, the Plourdes allege that the Defendants (in particular Gary Dumond) have placed a variety of advertising and travel direction signs on the nearby snowmobile trail, known as the Heritage Trail. The signs invite snowmobilers using this major snowmobile trail to exit the trail and travel several hundred yards into downtown Fort Kent via St. Joseph St. to patronize local businesses. The Plourdes complain that these signs have promoted and encouraged a high volume of snowmobile traffic in this area and have effectively converted St. Joseph St. into the principal snowmobile access trail leading to downtown Fort Kent[2]. The Plourdes complain that by their actions, the Defendants have contributed to a seemingly endless stream of snowmobilers traveling back and forth in front of their home at all hours of the day and night, creating loud noise, significant air pollution, and safety hazards.

The Plourdes reside at the northeast corner of St. Joseph St. in Fort Kent. The Defendants Gary and Pauline Dumond reside directly across the street at the northwest corner of St. Joseph St. The Dumonds own and operate a snowmobile sales and service business at their home on St. Joseph St. This is a "grand fathered" commercial use in

---

[1] The Plaintiff and Defendants Valley Sno-Riders, Inc., and Gary Dumond and Pauline Dumond have also presented to the court their positions regarding the Plaintiff's request for a declaratory judgment interpreting 12 M.R.S.A.§ 7827 (23)(D) (1) and accordingly the court will deem count III of the complaint to have been tried to the court with the consent of the parties. The court's judgment on this count is set forth herein.

[2] The Plaintiffs are particularly upset by this development because the Town of Fort Kent has recently considered exercising its authority to designate St. Joseph St. as a snowmobile access route pursuant to 12 M.R.S.A. § 7827 (23)(D)(7) and they declined to do so.

what is otherwise a residential zone. The Dumonds also own the lot that abuts the Heritage Trail. Snowmobilers exiting the Heritage Trail at this point, do so by leaving the trail and going directly onto the Dumonds' property. From there, they travel across the Dumonds' parking lot; cross Pearl St and then proceed northerly down St.Joseph St.

The Plourdes argue that snowmobilers using St. Joseph St. in this fashion are not only creating a nuisance, they are violating 12 M.R.S.A.§7827 (23)(D)(1). The Dumonds (who took the lead in this litigation) contend that the statute permits the current snowmobile traffic on St. Joseph St. The statutory section at issue provides:

> Properly registered snowmobiles may operate on a public way only the distance necessary, but in no case to exceed 300 yards, on the extreme right of the traveled way for the purpose of crossing, as directly as possible, a public way, sidewalk, or culvert. 12 M.R.S.A. § 7827 (23)(D)(1)

The Dumonds argue that the court should be guided by past enforcement practices and construe the statute to allow snowmobile traffic on a public street from one point of lawful operation to another point of lawful operation, no more than 300 yards away. This construction would effectively legitimize all of the snowmobile traffic that lies at the heart of this dispute.

The Dumonds contend that there has been snowmobile traffic in this area and in particular over the northerly end of St. Joseph St. for nearly 25 years and certainly since Plourdes moved into their home in 1985. While the Dumonds dispute the Plourdes' estimate of hundreds (and occasionally thousands) of snowmobiles using St. Joseph St., they do not dispute that over time, there has been a significant increase in the volume of snowmobile traffic in the area in general including traffic on St. Joseph St. The Dumonds

maintain that neither the noise nor the fumes are as offensive as described by the Plourdes and that any safety hazards can be addressed by the exercise of ordinary care.

## DISCUSSION: PRELIMINARY INJUNCTION

The court must consider an application for a preliminary injunction according to the provisions of M.R.Civ. P. 65 and according to established principles of law. At the outset,

> "it may be said that the attitude of our Maine court upon the subject of injunction is conservative. The writ of injunction is declared to be an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case." *Bar Harbor Banking & Trust, Co. v. Alexander* 411 A.2d 74 (Me 1980).

The Law Court has set forth the governing principles in *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691 (Me 1982) as follows:

> Before granting a preliminary or permanent injunction, the court must find that four criteria are met:
>
> 1. That plaintiff will suffer irreparable injury if the injunction is not granted,
>
> 2. That such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,
>
> 3. That plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),
>
> 4. that the public interest will not be adversely affected by granting the injunction.

The Law Court has instructed that in cases where the requested preliminary injunction has mandatory aspects, (i.e. requires a party to take affirmative steps such as in the request now before the court) the moving party has a heightened burden of showing "a clear likelihood of success on the merits not just a reasonable likelihood." *Dept.of Env. Protection vs. Emerson* 563 A.2d 762, 768 (Me 1989) In addition, the Law Court

has said that these criteria are to be considered together rather than woodenly and in isolation from one another. *Id.* 768.

The first of the four criteria requires a plaintiff to demonstrate "irreparable harm". This can be achieved by demonstrating that the claimed injury is one for which there is no adequate remedy at law. *Bar Harbor Banking* at 79. Irreparable injury can be demonstrated where the plaintiff is subject to repeated trespasses, to a continuing nuisance or where he faces the prospect of a multiplicity of law suits in order to obtain relief. *Wilson v. Harrisburg et al.* 107 Me 207,218 (1910).

In this case, it is clear that the Plourdes are likely to face continuing problems if an injunction is not granted. They have been subjected to repeated trespasses and to an ongoing nuisance for several years. Every snowsledder who trespasses upon the Plourdes' property creates a potential new cause of action. Given the obvious growth in snowmobile traffic in Fort Kent, each new snowmobile season is likely to be as good as (or as "bad as", depending on one's point of view) as the previous one.[3] It is not reasonable to expect, nor would it be desirable from any perspective for the Plourdes to initiate a new and separate lawsuit against each trespasser or to initiate a lawsuit each season to address the complaints that they have. The court finds therefore that they have satisfied the first criterion of demonstrating irreparable injury.

The second consideration requires a balancing of prospective harm that would flow from the granting of a preliminary injunction. The Plourdes use and enjoyment of their property has been significantly affected. The court accepts their testimony regarding

---

[3] The court observes that the impending arrival of spring will not render this controversy moot. Although the Plourdes make a private claim, it is of considerable public interest and the issues will likely recur again with the arrival of the next snowmobile season.( See *Campaign for Transp. V. Maine Turnpike* 658 A.2d 213, 215 (Me 1995)).

the repeated trespasses upon their property; regarding the noxious fumes (a circumstance which appears to have been somewhat ameliorated by a diversion of snowmobile traffic to the opposite side of the street); regarding the extent of the noise; and regarding the presence of potential safety hazards caused by snowsleds and motor vehicles using the same relatively narrow residential streets. The Plourdes' neighbor Gil Dubois, who testified that he too smells the fumes at his home, corroborates their complaints. Mr. Dubois no longer uses the two front rooms of his home because the noise from the snowsleds is too loud. He has observed snowsleds driving three abreast down St. Joseph St at an unreasonable speed and he has had a near collision with a snowsled on at least one occasion. The court is persuaded that in the absence of injunctive relief or other solution to their present circumstance, the Plourdes will suffer significant ongoing injury.

If the request for an injunction is granted, however, there will undoubtedly also be harm to the Dumonds' interests. They depend upon snowmobile traffic at issue for an estimated 40% of their livelihood. They sell snowmobiles and accessories and perform service work at their place of business, which also happens to be their home. Defendant Gary Dumond testified that neither he nor his family were bothered by the noise and fumes associated with the snowmobile traffic. It is apparent to the court that for four months of each winter, significant numbers of snowmobiles pass within several feet of the doorsteps of both Plourdes' and Dumonds'. The court concludes that the Dumonds are more tolerant of the less desirable realities of snowmobile use because of their long standing family connection to the business and because of what it represents to their own obvious economic interests. The fumes and noise from even a small number of

snowmobiles passing within such a close distance of his home are going to disturb the peace and tranquility of any person of reasonable sensitivity.

The right to enjoy one's home and the right to make a living are both fundamentally important to every Maine citizen who seeks to exercise the natural rights of life, ownership and enjoyment of property and the pursuit of happiness and safety as guaranteed in the Maine State Constitution. (See Maine State Constitution, Article I). Evaluating and weighing the harm to these important but competing interests is difficult in this case.

The evidence indicates however that the Dumonds own the property that abuts the Heritage Trail at the current access point. The property currently consists of a commercial warehouse and a parking lot. The court has conducted a view of the area in question and to the court's observation, the Dumonds appear to have an alternative that is not available to the Plourdes. The Dumonds could potentially mitigate the extent of their economic injury by moving some aspect of their business interests approximately 500 feet to their other lot. Such a move could put their business in immediate proximity to the same snowmobile traffic that currently patronizes their business but at the same time it would eliminate the safety issues and significantly reduce the level of disturbance within the neighborhood. Some further investment of resources may be required to accomplish this move but it seems a less onerous burden than effectively depriving the Plourdes, who have no similar alternative, of the use and enjoyment of their home.[4] The court deems the

---

[4] The court recognizes that there may well be reasons unknown to it why this could not be done. The parties are well advised to remember that even the most informed court will not understand their situation as well as they do.

harm to the Plourdes to outweigh the harm to the Dumonds and accordingly, the

Plaintiffs sustain the second criterion as well.[5]

The third criterion requires an evaluation of the Plourdes' likelihood of success on

the merits. They claim they have a right of action against the Defendants based on

common law nuisance. Maine law has long recognized a right of action associated with

nuisance that interferes with a person's use and enjoyment of land.

In 1863, the Maine State Supreme court decided *Norcross v. Thoms.*, 51 Me 503

(1863). In this case, the Court upheld a trial court's finding that a blacksmith shop,

which spewed ashes, dust and cinders into the air, and which was located some 12 feet

from a neighbor's property was a nuisance and observed:

> A nuisance...consists in the use of one's own property in such a manner as to
> cause injury to the property, or other right, or interest of another. It is the injury
> annoyance, inconvenience or discomfort, thus occasioned, that the law regards,
> and not the particular business, trade or occupation from which these result. A
> lawful as well as unlawful business may be carried on so as to prove a nuisance.
> The law, in this respect looks with an impartial eye upon all useful trades,
> avocations, and professions. However ancient, useful, or necessary the business
> may be, if it is so managed as to occasion serious annoyance, injury or
> inconvenience, the injured party has a remedy....The business of a blacksmith,
> though honorable, necessary and useful, should be carried on so as not to injure
> others. *Norcross* p. 505

The court noted that a smith's forge, operating a tobacco mill, carrying on a tannery,

keeping a livery stable, and manufacturing soap had, under appropriate circumstances, all

been found to constitute a nuisance. *Id.* p. 505. It seems worthy of note that these were all

---

[5] It should be noted that neither of the other two Defendants have presented any evidence of harm to their particular interests and consequently the competing "harms" that the court has considered have been confined to those risks to which the Plaintiffs and Defendants Dumond are exposed. Neither The Inhabitants of the Town of Fort Kent nor the State of Maine, Department of Conservation are named Defendants in this matter and no injunctive relief is sought directly against either. They have simply been identified as parties in interest, so the court has not considered potential harm of injunctive relief to either in this particular aspect of its analysis.

businesses that contributed significantly to the general public good but which were curtailed because of their unreasonable interference with the rights of an individual citizen.

More recently the Law Court has stated that the essence of a claim for private nuisance is an interference with the use and enjoyment of land and in *Charlton v. Town of Oxford,* 2001 ME 104, 774 A.2d. 366 (Me. 2001) articulated the elements of a common law nuisance as follows:

> 1. The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use;
>
> 2. There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;
>
> 3. The interference that resulted and the physical harm, if any, from that interference proved to be substantial...The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct;
>
> 4. The interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.

The Law Court indicated, that the "intentional interference" requirement means simply that the 'defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow." Charlton ¶ 37 n.11

The court has little difficulty in concluding that the Plourdes satisfy the first two elements of proof. The third element is more problematic. In order to prevail on a claim for nuisance, they have an obligation to demonstrate substantial and unreasonable

interference in the use and enjoyment of their property as the result of the Defendants' actions. The Law Court has stated:

"Substantial simply means a significant harm to the plaintiff and unreasonably (sic) means that it would not be reasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it…However [w]hen defendant's conduct involves mere physical discomfort or mental annoyance, there is somewhat more difficulty in deciding when the interference is substantial and unreasonable justifying a recovery for damages. *Probably a good working rule would be that the annoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land.* (Emphasis supplied)" Charlton ¶ 36 n.10.

As the elements of common law nuisance are presently articulated under Maine law, in order to prevail, a plaintiff needs to support a claim of "substantial interference" by providing evidence of reduced land value as the result of the offending nuisance. The court has conducted only a limited hearing in connection with this application for a preliminary injunction and presumably will receive more evidence at the full hearing on the merits of these claims. On the basis of the current record however, the court cannot find sufficient proof of reduced land value for the Plourdes' property. This is a required finding to sustain a nuisance claim. While the court might speculate about the effects of such a high volume of snowmobile traffic upon the value of Plourdes' property it will not do so.

Confining its review in this matter to the evidence that is in the record before it and applying the somewhat heightened standard of proof of a "clear likelihood of success" that must be applied in this matter at this particular stage of the proceedings, the court is unable to determine from the record what the affect of the snowmobile traffic has been upon the value of Plourdes' property and accordingly, must find that there is insufficient evidence in the present record to enable the court to conclude that there is a

clear likelihood that they will prevail on the merits of their claim. This leads the court to the conclusion that it must deny the Plourdes' application for a preliminary injunction. This finding obviously does not preclude them from presenting further evidence upon this issue at the full hearing on the merits. The parties are cautioned that they should not regard this ruling on the application for a preliminary injunction to be determinative of the court's ruling on the application for the permanent injunction.

Given the evidentiary deficiency regarding the third element of proof, it is not necessary to undertake a thorough evaluation of the fourth criterion which obliges the court to undertake an analysis of whether the public interest would be adversely affected by shutting off snowmobile traffic to an important business area.[6]

The court has other concerns regarding the application for injunctive relief in this case. The Plourdes seek injunction relief against all the named defendants and although the law does provide for joint and several liability for nuisance, (see *Town of Stonington v. Gospel* 1999 ME 2, ¶18 722 A.2d 1269, 1273) it does not appear that all defendants have engaged in conduct which has contributed to the circumstance about which the Plourdes complain.

Additionally, injunctive relief is sought against the Fort Kent Snowmobile Association. Aside from the question of whether there is any evidence to establish that this association ever did anything related to the Plourdes' claims for relief, it is clear from

---

[6] The court would note that at this juncture of the proceedings, the Town of Fort Kent is only a "party in interest" and not a defendant. In either status, given its obvious stake in sustaining its snowmobile tourism industry however and inasmuch as there is a significant possibility that the court will reach the fourth element of this analysis at the trial on the merits, the town may want to redouble the efforts of the committee previously appointed to address this issue and promote the public interest.

the evidence that this defendant is not a legal entity. The Law Court has indicated that "absent specific statutory authorization, an unincorporated association has no capacity to sue or be sued in its own name." *Gulick v. Board of Environmental Protection* 452 A.2d 1202, 1203, n.1 (Me 1982). There has been no appearance on behalf of the Fort Kent Snowmobile Association and the evidence indicates that it is in essence a bank account into which monies are deposited which the Town of Fort Kent then manages.

The Plourdess argue that the Fort Kent Snowmobile Association is the "alter ego" for the Town of Fort Kent. For purposes of discussion only and without making this finding, the court would then observe that the town has not been made a defendant. The Inhabitants of Fort Kent are named as a "party in interest" as is the State of Maine Department of Conservation. Given the legal status of these parties in this proceeding the court hesitates to consider awarding relief against an entity that is not a defendant. These are issues that may need to be revisited prior to concluding the present litigation.

## DISCUSSION: DECLARATORY JUDGMENT

Count III of the Plourdes'complaint seeks a declaratory judgment[7] providing the court's interpretation of 12 M.R.S.A.§ 7827 (D)(1) which states:

> Properly registered snowmobiles may operate on a public way only the distance necessary, but in no case to exceed 300 yards, on the extreme right of the traveled way for the purpose of crossing, as directly as possible, a public way, sidewalk, or culvert. 12 M.R.S.A. § 7827 (23)(D)(1)

---

[7] Plaintiffs' application for temporary injunction is sought on the basis of nuisance. Notwithstanding the conclusion reached by the court herein, the Plourdes must still satisfy the elements of a nuisance claim.

The Defendants Valley Sno-Riders and the Dumonds have addressed this issue as part of the pending proceedings. The Inhabitants of the Town of Fort Kent have advised the court that they take no position regarding the interpretation of this statute. The State of Maine, Department of Conservation has joined in a stipulation with the Plourdes to the effect that the State of Maine agrees with their construction of the statute as set forth in paragraph 47 of the complaint but takes no position regarding whether the facts of this case demonstrate any violation of the statute. As indicated herein, although the initial request for hearing was limited to the application for preliminary injunction, the court concludes that the parties have tried Count III of the complaint by consent as part of that hearing and will therefore address the issues raised.[8]

At the outset, it's important to remember that the legislature has always prohibited snowmobiles from operating on public ways, sideways, or plowed snowbanks. Today, 12 M.R.S.A. § 7827 (4) provides:

> A person is guilty, except as provided in subsection 3 and subsection 23, paragraph D, of operating a snowmobile upon a public way if he operates a snowmobile upon the main traveled portion, the sidewalks, or the plowed snowbanks of a public way.

In 1969 the legislature enacted the predecessor to what is now 12 M.R.S.A. §7827 (4). Maine's first snowmobile law provided:

> No person shall operate a snowmobile upon the main traveled portion, or the plowed snowbanks, or of any other public way, with the following exceptions:

---

[8] None of the parties have addressed the issue of whether this case, in fact, satisfies the declaratory judgment requirement of a "justiciable controversy" sufficient to warrant the court's construction of the statute. In this case, it is not the government's enforcement or threatened enforcement of law, it is the government's lack of enforcement that creates the controversy.

1. Crossing ways. Properly registered snowmobiles may cross, as directly as possible, public ways, except controlled access highways, provided that such crossing can be made in safety and that it does not interfere with the free movement of vehicular traffic approaching from either direction on such public way. It shall be the responsibility of the operator of the snowmobile to yield the right-of-way to all vehicular traffic upon any public way before crossing the same.

2. Other portions. Snowmobiles may operate on any portion of the public ways when the main traveled portion is unplowed and unused during the winter months by conventional motor vehicles. If the main traveled portion of a public way is plowed and utilized by conventional motor vehicles during the winter months, the operation of conventional motor vehicles, except that operation shall be prohibited during the hours from sunset to sunrise on the portion of the way not maintained or utilized for the operation of conventional motor vehicles. This subsection shall not be construed to prohibit snowmobiles from crossing said ways as provided in subsection 1.

   Under no circumstances, except as provided, is a snowmobile to be operated on the main traveled portion of a way, or that portion of a way that has been plowed or on a snowbank immediately adjacent to the plowed way unless such operation is conducted for the *sole purpose* (emphasis supplied) of crossing said way as provided in subsection 1. Laws, 1969, c. 414, § 1.

From the outset of its efforts to regulate snowmobile traffic, the legislature recognized the importance of keeping snowmobiles off the public streets. There could be no doubt that snowmobile traffic upon public ways presented an obvious safety hazard. The language of the 1969 statute makes it abundantly clear that the legislature intended to restrict the use of public ways by snowmobiles. Although the language has been reformulated in the present statute, the legislature has not signaled any retreat from its original concerns about public safety. Present day safety concerns are just as great, if not greater, than they were back in 1969. It should be obvious to all that ever increasing numbers of snowsleds only add to these safety concerns. Through its use of the phrases, *"only the distance necessary"," for the purpose of crossing"*, and *"as directly as possible"* in the present statute, the legislature expresses the same restrictions and

limitations on snowmobile use of the public way as it first set forth in the phrase *"for the sole purpose of crossing said way"* in the original statute.

The Dumonds argue that the court should give deference to the interpretation adopted by the principal enforcing agency of snowmobile laws. *Munjoy Sporting & Athletic Club vs. Dow*, 2000 ME 141, ¶ 8, 755 A.2d 531. They have provided the court with the affidavit of Lt. Marshall of the Maine Warden Service. Lt. Marshall indicates that the Maine Warden Service has uniformly interpreted the statute in the manner urged by the Defendants. This interpretation would allow snowmobiles to operate on the extreme right of the public way for up to 300 yards from one point of lawful operation to another point of lawful operation. The court holds the view that the position adopted by the Maine Warden Service reflects an enforcement policy rather than a legal interpretation. Maine law clearly recognizes that a certain amount of prosecutorial discretion in the enforcement of our criminal laws is an inherent part of our criminal justice system and grants to those charged with the responsibility of enforcing our laws considerable latitude. The court finds itself in respectful disagreement with Lt. Marshall and the Maine Warden Service however, on the meaning of the statute. A flexible, common sense approach to law enforcement may be entirely understandable under the circumstances of a given case, but in the court's opinion, this cannot alter the language and plain meaning of the statute. The court concludes that 12 M.R.S.A.§ 7827 (23)(D)(1) does not sanction the use of St. Joseph St. as a snowmobile access trail to downtown Fort Kent. The court concludes that the primary goal of 12 M.R.S.A. § 7827 (23)(D)(1) and its predecessors has always been promotion of public safety not promotion or development of economic or recreational interests. Free and easy access for snowmobiles to places of

business is obviously important to any community but the court can find no evidence of a legislative intent to promote business or recreational interests at the expense of public safety or to deprive a citizen of the value of his property without just compensation.

That the legislature has enacted 12 M.R.S.A.§7827 (23)(D)(7) does not alter this conclusion. This most recent exception to the general prohibition disallowing snowmobiles on public roads recognizes the potential economic benefit of snowmobile traffic for communities and provides for local decision making in this regard. The communities who seek to create for themselves an exception to the general prohibition by enacting local ordinances allowing snowmobilers to utilize public streets to gain access to the business sections must conduct a careful review and analysis of the competing economic, safety, and private property issues that attend that determination. Ironically, notwithstanding that the town has already considered and rejected a proposal to establish St. Joseph St. as a snowmobile access route, it appears that one exists.

The Plourdes may very well seek to make the Town of Fort Kent a defendant in this matter and ask that injunctive relief be ordered against it as well as against the other defendants on the basis of the court's interpretation of the statute as set forth above. Even if the Inhabitants of the Town of Fort Kent were made a defendant to this case however, this court would note that our Law Court has instructed that trial courts should proceed with restraint in issuing an injunctive order against a governmental body observing wisely that " Oftentimes a mere declaration of legal rights or of legal rules will suffice to govern future official action." *Maine Human Rights Com'N v. City of Auburn*, 425 A.2d. 990, 995 (Me 1981).

The present case is a difficult one and offers no easy solution. There is a snowmobile traffic problem in Fort Kent that will not melt away with the snow. To date, an acceptable solution to a uniquely local problem has eluded the parties and so they have turned to the courts to impose a solution. The court cannot promise a solution but it can conduct a trial which will ultimately yield a legal result. Whether this result will ultimately prove more satisfactory than a result chosen by the parties for themselves remains to be seen.

**The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ. P. Rule 79(a)**

March 18, 2002

_____
JUSTICE, SUPERIOR COURT

## Robert J. and Candyce C. Plourde vs. Valley Sno-Riders, Inc.

Docket No. CARSC-CV-02-007

Robert J. Plourde
Candyce C. Plourde
P.O. Box 457
Fort Kent, ME 04743
TEL:        834-3921
FAX:        834-3353
E-mail:     rjplourde@nci2.net

Valley Sno-Riders, Inc.
c/o Allen Chamberland
P.O. Box 131
Fort Kent, ME 04743

Fort Kent Snowmobile Association

Fort Kent, ME 04743

Town of Fort Kent
416 West Main Street
Fort Kent, ME 04743
TEL:        834-3090

Gary and Pauline Dumond
2 St. Joseph Street
Fort Kent, ME 04743

State of Maine Department of Conservation

Richard L. Currier, Esq.
CURRIER & TRASK, P.A.
505 Main Street
Presque Isle, ME 04769
TEL:        764-4193
FAX:        764-7593
E-mail:     rick@curriertrask.com

Frank H. Bishop, Sr., Esq.
STEVENS, ENGELS & BISHOP
P.O. Box 311
Presque Isle, ME 04769
TEL:        764-5481
FAX:        764-1663
E-mail:     bishoplaw@ainop.com

Robert R. Michaud, Esq.
101 West Main Street
Fort Kent, ME 04743
TEL:        834-3492
FAX:        834-7426
E-mail:

David C. King, Esq.
RUDMAN & WINCHELL, LLC
P.O. Box 1401
Bangor, ME 04402-1401
TEL:        947-4501
FAX:        941-9715

Alan F. Harding, Esq.
HARDING LAW OFFICES
427-429 Main Street
Presque Isle, ME 04769
TEL:        764-0131
FAX:        764-5751
E-mail:     hardings@ainop.com

Jeffrey R. Pidot, Esq.
Department of the Attorney General
6 State House Station
Augusta, ME 04333-0006
TEL:   626-8583
FAX:   626-8812
E-mail: Jeff.Pidot@state.me.us