STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss                            CIVIL ACTION
                                        Doc. No. AP-17-17

ARNOLD MEMORIAL MEDICAL        )
CENTER,                        )
                              )
          Petitioner,          )
                              )
     v.                        )        **ORDER ON PETITIONER'S**
                              )        **M.R. CIV. P. 80C APPEAL**
STATE OF MAINE, DEPARTMENT      )
OF HEALTH AND HUMAN SERVICES   )
                              )
          Respondent.          )


Before the Court is Petitioner's M.R. Civ. P. 80C appeal of agency action seeking

reversal of the Respondent Department of Health and Human Services ("DHHS") decision to

recoup $970,315.55 in payments to Petitioner for care relating to opioid addiction and other

substance abuse issues that it rendered to MaineCare patients between January 1, 2011 and

September 17, 2012 (the "Review Period").

I.     Background

       A. Arnold Memorial Medical Center

Arnold Memorial is a community medical center in Washington County which was

founded in 1985. Effective February 3, 2010, Arnold Memorial entered into a Medicaid/Maine

Health Program Provider/Supplier Agreement" with the Department of Health and Human

Serivices (the "Department") in order to become a MaineCare provider. In 2003, Arnold

Memorial became one of the first providers in Maine to become certified to prescribe Suboxone.

Since then, it has consistently met its patient regulatory cap for its Suboxone program. A

1

cornerstone of Arnold Memorial's addiction treatment program is urine drug screening tests to monitor the presence of drugs in the patient's system. Treatment consists of monitoring a patient multiple times a week at the beginning of their treatment, in order to ensure that there is not time between screenings for drug use to become indiscernible.

Arnold Memorial, in its capacity as a Rural Health Clinic, also administers the core diagnostic laboratory tests in order to care for their population's typical medical needs. These tests include urinalysis to screen for kidney disease, liver disease, blood in urine, and certain cancers; hemoglobin test; blood sugar screening for diabetes; stool sample; pregnancy test; and a strep test.

### B. MaineCare Reimbursement and Billing Codes

The MaineCare Benefits Manual sets out the guidelines for MaineCare coverage and payment of Rural Health Clinics services. Chapter II, § 103 provides for coverage of "core services" delivered by a Rural Health Clinic, including "basic laboratory services essential for the immediate diagnosis and treatment of illness or injury." One example provided of such services is "chemical examination of urine by stick or tablet method." Chapter II, § 103.04(1)(C)(1). The regulations note that "[t]o qualify for reimbursement, laboratory services must be in compliance with the rules implementing the Clinical Laboratory Improvement Amendments of 1988 (CLIA '88') and any related amendments."

According to the MaineCare Benefits Manual, when billing as a Rural Health Clinic, providers must bill all core services using the billing code T1015. However, Rural Health Clinics "have the option of obtaining a separate MaineCare provider billing number for the limited purpose of fee-for-service billing and reimbursement for such services as X-ray, EKG, inpatient

2

hospital visits and other Medicare defined non-RHC Services that are billable under Medicare Part B." Chapter II, § 103.09.

In this case, Arnold Memorial used a separate MaineCare provider billing number specific to Arnold Memorial, 80101, when billing for urine drug screening tests. Arnold Memorial added "QW" to the code to indicate that it was a "CLIA-waived" test.[1] By billing in this manner, Arnold Memorial billed for each substance that the test screened for individually. The Department found that this was incorrect billing for two reasons. First, the Department determined that urine drug screening tests were core services and therefore should have been billed for using the billing code T1015. Second, even if the Department had found that urine drug screening tests were not core services, Arnold Memorial should have used the billing code G0434 rather than 80101. Billing code G0434 was created November 29, 2010 and was made to be used for high complexity lab tests.[2] Therefore, the Department found, Arnold Memorial should have submitted a single UB claim form including both billing code T1015 and billing code G0434 for a low-complexity, "CLIA waived" test, with a single unit of service identified for each multi-drug screen performed.[3]

C. Core Services and "CLIA-waived" Tests

The Department determined that a urine drug screening test was a "basic laboratory service" and therefore should have been billed as a core service according to Chapter II, §

---

[1] What constitutes a "CLI-waived" test is further discussed below.
[2] Despite being created on November 29, 2010, the Department did not send out notice to providers of the purpose of billing code G0434, or the decision to no longer allow claims using billing code 80101, until August 12, 2013 when the Department provided informal notice by email to MaineCare providers subscribing to its provider list-serve identifying a series of billing codes for urine drug testing that had been eliminated and applying retroactive effective dates. Among the eliminated codes was 80101. The Department contends that it was not required to send notice. The parties stipulate that billing code 80101 was still available between January 1, 2011 and September 17, 2012.
[3] The Department notes multiple times in its Decision that the practical effect of billing in the manner that Arnold Memorial was billing was that Arnold memorial routinely billed $200 per claim for the urine drug screening test, which had an actual cost of $10 for the two cassettes.

103.04(1)(C)(1). The categorization as a "basic laboratory service" was based upon the CLIA standards as set by the Centers for Medicare and Medicaid Services and the Food and Drug Administration which assign relative complexity levels to laboratory tests based upon the training and experience required to administer the test, the operational steps, and the materials required, among other factors. *See* 42 C.F.R. § 493.17. The urine drug screening test at issue in this appeal was considered CLIA-waived, or a low complexity test.[4] The Department found that because the test is CLIA-waived, it is a "basic laboratory service" for purposes of MaineCare coverage and billing. The Department found that as a "basic laboratory service" the urine drug screening test should have been billed as a core service.

### D. Procedural History

In 2015, Department's comprehensive health planner Eva Stewart reviewed Arnold Memorial's billing claims submitted between January 1, 2011 and September 17, 2012. On June 5, 2015, the Department issued a Notice of Violation against Arnold Memorial alleging that Arnold Memorial was overpaid $970,315.55 during the period of January 1, 2011 to September 17, 2012. The Notice of Violation stated:

> The claims data shows that AMMC billed and was paid for Urine Drug Testing Codes submitted on a HCFA as well as the encounter code (T1015) on a UB claim form. The correct billing for services would have been for codes T1015 and G0434 to be billed on one UB claim form. Submitting for Urine Drug Testing Codes on a HCFA resulted in overpayment.

Notice of Violation, June 5, 2015. On August 4, 2015, Arnold Memorial requested informal review of the June 5, 2015 Notice of Violation. On November 23, 2015, the Department issued a "Final Informal Review Decision" upholding the recoupment amount of $970,315.55. On

---

[4] The test involves collecting urine in a pipette, applying drops of urine from the pipette into each specimen well of the test cassette, then, after five minute, reading the color line indicators to determine whether any of up to 11 drugs are present in the urine.

4

January 22, 2016, Arnold Memorial requested an administrative hearing. Hearing was held September 20, 2016. The hearing officer issued a decision on January 25, 2017 upholding the Final Informal Review Decision and recoupment amount. On March 22, 2017, the Commissioner of the Department adopted the Findings of Fact and Recommended Decision of the Hearing Officer. Arnold Memorial now appeals the determination to the Superior Court.

II.    Standard of Review

When reviewing the determination of a government agency, the Court looks to issues of statutory construction de novo. *Munjoy Sporting & Ath. Club v. Dow*, 2000 ME 141, ¶ 7, 755 A.2d 531. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id*. Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id*.

III.    Discussion

Reading the plain language of the regulation, Rural Health Clinic core services included "basic laboratory services essential for the immediate diagnosis and treatment of illness or injury." A plain reading would not equate "basic laboratory services essential for the immediate diagnosis and treatment of illness or injury" with the CLIA guidelines. While basic can mean

5

low-complexity as is implied by a CLIA-waived test, it does not necessarily connote simplicity. A test may be basic while also being complex. The Court finds that "CLIA-waived" is not interchangeable with "basic" for the purposes of regulatory interpretation.

Furthermore, not all basic laboratory services are considered core services for the purpose of MaineCare reimbursement. Only those basic laboratory services which are essential for the "immediate diagnosis and treatment of illness or injury" are considered core MaineCare services for Rural Health Clinics. The plain language of the regulation displays an intent to categorize laboratory tests that are used for the purpose of *both* diagnoses *and* treatment of the patient's illness or injury. That intent is displayed in the examples the regulation provides. All of the laboratory tests listed, such as a pregnancy test or blood sugar test, would be used for the purpose of determining the diagnoses in order to provide appropriate treatment.

In this case, pursuant to a plain reading of the regulation, the Court finds that the urine drug screening tests as administered as part of the Arnold Memorial Suboxone program are not core services pursuant to Chapter II, § 103.04(1)(C)(1) of the MaineCare Benefits Manual. Unlike the other laboratory tests listed, the urine drug screening tests performed by the Arnold Memorial Suboxone program were not administered as diagnostic tools used in order to determine what treatment to provide. In this case, the urine drug screening test was in and of itself the treatment for an already diagnosed illness, namely addiction. For that reason, the Court finds that the Department erred in its finding that Arnold Memorial should have billed the urine drug screening tests under the billing code T0101 as a core service.

As between the billing code used by Arnold Memorial for the urine drug screening tests, 80101, and the billing code that the Department contends that Arnold Memorial should have known to use, G0434, the Court does not find sufficient facts in the record to support the

6

determination by the Department. The Court seeks further factual development of when billing code G0434 began being used by providers, where information on the billing code may have been found prior to January 2011, and how the intended use of billing code G0434 varies from the intended use of CPT code 80101.

IV.    Conclusion

The Court reverses the Department's determination that the urine drug screening tests performed by Arnold Memorial should have been billed as core services, finding that a plain reading of the regulation would not categorize the urine drug screening tests as RHC core services.

The Court remands this action to the Department for further factual development concerning the timing and application of billing codes G0434 and 80101.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE:    8 | 7-1(r

Michaela Murphy
Justice, Superior Court

7