STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss.                           CIVIL ACTION
                                        DOCKET NO. AP-17-30

TERRENCE MARKS                    )
                                  )
            Petitioner,           )
                                  )
v.                                )
                                  )     **ORDER ON PETITIONER'S**
MAINE PUBLIC EMPLOYEES            )     **M.R. CIV. P. 80C APPEAL**
RETIREMENT SYSTEM                 )
                                  )
            Respondent.           )

I.      Background

As the Court recounted in its Order on Petitioner's Motion to Claim an Independent Basis

for Relief and to Take Additional Evidence, Petitioner appeals the denial of his request for

disability retirement benefits by the Maine Public Employees Retirement System ("MPERS").

Petitioner filed an application for disability retirement benefits on November 10, 2015 based

upon the following conditions: stage 4 kidney failure; dizziness, weakness, fatigue; chronic

kidney pain, flank pain; swollen legs; headaches; and blood pressure fluctuation. On March 30,

2016, the Executive Director of MPERS issued a decision denying the application on the

grounds that there were no functional limitations associated with stage 4 kidney disease that

would have made it impossible for Petitioner to perform his job duties at the Maine Department

of Transportation ("MDOT") as of his last date in service.

Petitioner was hired by MDOT in 1996. On his last day of service, November 17, 2015,

Petitioner was a Transportation Worker II for MDOT. His duties included shoveling, ditching,

snowplowing, cutting brush, operating a road grader, and patching roads. Petitioner was

diagnosed with progressive polycystic kidney disease ("PKD") in 1995. During his twenty-year

1                      **Entered on the Docket:** 8/22/18

tenure at MDOT, Petitioner developed fatigue, episodic headaches, weakness, lightheadedness, and elevated blood pressure. He also began experiencing spells during which he became dizzy, lightheaded, and experienced other listed symptoms acutely. He experienced seven spells and missed seven weeks of work. On November 10, 2015, upon experiencing a spell which brought him to the emergency room two days earlier, Petitioner's primary care provider excused him from work with a note. Petitioner did not return to work.

Prior to and up to the date of the determination, Petitioner was treated by numerous doctors and underwent many tests. Notes from both specialists and primary care physicians indicated that it was "difficult to say if his multitude of other symptoms can be attributed to his [polycystic kidney disease]." However, in April and May of 2016, after the March 30th decision was issued, having performed many tests in order to provide an informed opinion, four doctors attributed other symptoms Petitioner experienced, including spells, flank pain, nausea, fatigue, weakness, difficulty sleeping, abdominal pain, and bloating to his polycystic kidney disease.

On April 12, 2016, Petitioner appealed the March 30, 2016 decision pro se. Hearing was held on June 15, 2016. Petitioner and his wife, Tina Marks, testified. No witnesses testified for MPERS. The Medical Board (the "Board") reviewed the record and issued a memorandum on August 4, 2016. The memo did not contest Petitioner's diagnosis of kidney disease, however, the Board found that there were no functional limitations associated with that diagnosis. The Board found that the spells, dizziness, and fatigue were not symptoms associated with kidney disease. It found that any flank or back pain could not be clearly associated with the kidney disease because of Petitioner's history of back pain. On August 10, 2016, the Executive Director issued a decision concluding that there was no basis for changing the March 30, 2016 determination denying benefits.

2

Petitioner appealed the determination, which was reviewed by a hearing officer based upon written argument. Hearing Officer Huntington issued a determination on March 15, 2017, affirming the decision of the Executive Director. Petitioner filed this appeal of the denial pursuant to M.R. Civ. P. 80C.

## II. Standard of Review

When reviewing the determination of a government agency, the Court looks to issues of statutory construction de novo. *Munjoy Sporting & Ath. Club v. Dow*, 2000 ME 141, ¶ 7, 755 A.2d 531. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id.* Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id.*

## III. Discussion

Mr. Marks appeals the Board's determination denying him disability benefits. In order to be eligible for disability benefits, an applicant must show that he suffered from a disability as of the applicant's last date in service. 5 M.R.S. § 17924. The statute defines a disability as a medical condition that causes the individual to be mentally or physically incapacitated in such a way that makes it impossible for him to perform essential duties of his employment position and

3

is expected to be permanent. 5 M.R.S. § 17921. MPERS has interpreted this standard to require that a disability be based upon a medical condition, not symptoms alone. The Board is permitted to find support for a determination in Board reports and memoranda. *Kelley v. Me. Pub. Retirement System*, 2009 ME 27, ¶ 26, 985 A.2d 501.

The Board found that Mr. Marks showed that he suffered from symptoms as of his final date in service, November 17, 2015, but not that he suffered from a medical condition as of that date. The Board reasoned that Mr. Marks' stated symptoms were not attributable to PKD, the condition that four medical professionals agree Mr. Marks had, as of November 17, 2015. Instead, the Board found that the "spells" that led him to be advised not to return to work, including his dizziness, weakness, fatigue, and headache, could not be symptoms of PKD because he did not have indications of uremia, and the symptoms reported were not "part of the usual constellation of symptoms that accompanies the decline of kidney function typical in patients with PKD at State 3 or early Stage 4 without uremia."

The Board found that it would be unlikely that the symptoms that caused Mr. Marks to be unable to perform the duties of his job were a result of his PKD. There is no competent evidence in the record to support this finding. In the record, there are the expert opinions of four doctors, all of whom support a finding that Mr. Marks' spells, and other ailments, were caused by his PKD. The evidence in the record cited in support of the Board's finding merely demonstrates that Mr. Marks' symptoms were out of the ordinary. While unusual, the statute does not provide for the denial of benefits to those with unusual manifestations or presentations of medical conditions.

Additionally, the Board argues that because the diagnoses attributing Mr. Marks' symptoms to PKD were not documented by the four practitioners until six months after Mr.

4

Marks' last day in service, Mr. Marks' did not in fact have symptoms related to PKD on November 17, 2015. Mr. Marks underwent extensive testing in those months in order for the medical practitioners to diagnose Mr. Marks and identify the source of his symptoms. The fact that medical professionals were not immediately able to identify the source of symptoms is not evidence that the symptoms were not attributable to a medical condition. In its order, the Board unreasonably and without explanation gave much more weight to opinions given prior to testing than it did to the evidence provided by medical professionals – after extensive testing - that the symptoms were attributable to PKD. Its finding is not supported by competent evidence in the record.

Finally, the Board reasons that while Mr. Marks' flank pain was potentially attributable to PKD, his neck and low back pain resulted from longstanding problems with his neck and back rather than PKD. Because Mr. Marks had always been able to return to work after occasions of neck and low back pain in the past, the Board found that Mr. Marks' neck and low back pain were unlikely to permanently prevent Mr. Marks from working. The presence of some symptoms that are might not be attributable to the disability should not be construed to be evidence that the disability does not exist. The Court finds that evidence presented of previous back problems does not constitute competent evidence in the record supporting the Board's finding that Mr. Marks' other symptoms were not attributable to PKD.

IV.    Conclusion

The Court finds that the Board abused its discretion by making findings that are not supported by competent evidence in the record. The Court reverses the determination by the Maine Public Employees Retirement System.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE:    8/15/18

_____
**Michaela Murphy**
**Justice, Superior Court**

6